**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **GWENDOLYN B.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | **No. 20 C 3244** |
| ) | |
| **v.** ) | **Magistrate Judge Jeffrey Cole** |
| ) | |
| **ANDREW SAUL, Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income under

Titles II and Title XVI of the Social Security Act, 42 U.S.C. §§416(i), 423, 1381a, 1382c, over seven

years ago. (Administrative Record (R.) 493-505). She claimed that she became disabled as of

November 5, 2013, due to lupus, fibromyalgia, and arthritis. (R. 597). She is also obese, with a

BMI ranging from 34.5 to 38, (R. 64, 1207). Over the next six years, there were three administrative

hearings and two decisions by administrative law judges. Plaintiff's application was denied at every

level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals

council. It is the most recent ALJ's decision that is before the court for review. *See* 20 C.F.R.

§§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on June 1, 2020. The parties

consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on June 9, 2020. [Dkt. #9]. Plaintiff

asks the court to remand the Commissioner's decision, while the Commissioner seeks an order

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

affirming the decision.

# I.

## A.

Plaintiff was born on November 27, 1969, and was almost 50 years old at the time of the ALJ's decision on May 3, 2019. (R. 493). She has an excellent work record, working steadily for 25 years following three years of military service in the Army. (R. 551, 557-58). She has two years of college (R. 598) and has worked in a variety of occupations, mostly in customer service. (R. 620). She last worked in December of 2013. (R. 144). Since then, she claims that she has flare ups of lupus and fibromyalgia that leave her bed-ridden for two or three months. (R. 145-146). But there is no evidence she's ever mentioned these dire consequences to her doctors.

This case has pinballed around the Social Security Office of Hearings and Appeals for at least six years. The record, at over 3600 pages long, had to be filed in six separate installments. The medical record starts in 2007, jumps to 2013, leaves off in 2015 and goes back to 2014, then to 2016 and 2017, and back to 2013. It continues on through thousands of pages in this fashion as though organized by a blackjack dealer shuffling decks at a casino. So, one has to sympathize with the attorneys. More than once during these proceedings, plaintiff's own counsel understandably complained that he was unable to find evidence in the record because there were so many pages (R. 56, 93, 98, 112, 115); that "The record is just huge. It's just very difficult to read." (R. 94).

But, it must be underscored, as the ALJs attempted to do at the administrative hearings, no matter the bulk of the plaintiff's medical record, it is the plaintiff's burden to prove she is disabled with medical evidence. *See Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). That means that the claimant "bears the risk of uncertainty."

*Accord Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004); 20 C.F.R. § 404.1512(c) ( "You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."). "It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). Certainly, especially in the Seventh Circuit, *see, e.g., Carradine v. Barnhart*, 360 F.3d 751, 763-67 (7th Cir. 2004)(Coffey, J., dissenting), subjective complaints cannot be ignored. But, it remains incumbent upon a claimant for disability benefits to prove he is disabled with *medical evidence. Castile*, 617 F.3d at 927; *Scheck*, 357 F.3d at 702; *Yuckert*, 482 U.S. at 146, n. 5. It is up to the plaintiff's lawyer to sift through the record, even a massive one, and point that evidence out to the court. "[C]ourts do not have to scour the record or make a party's argument for it." *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 460 (7th Cir. 2019). It remains an "advocate's job is to make it easy for the court to rule in his client's favor....". *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006).

Moreover, while plaintiff's doctors may report that she is suffering from fibromyalgia or lupus, that does not decide the topic of whether she can work. Diagnosis does not equal disability. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). For example, while "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working . . . most do not . . . ." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996). *See also Hendricks v. Astrue*, 2009 WL 648610, at *9 (S.D. Ind. 2009)(Hamilton, J.). What matters is the severity of the condition and how it limits a plaintiff's capacity to work based on clinical and/or laboratory findings. *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (". . . it makes no difference if [plaintiff] saw [his doctor] 'every two-and-a-half months'. . . what does

matter is that [his doctor] did not confirm the severity of [plaintiff's impairment] with medical examinations or tests.").

Given time following the administrative hearings and the filing of this case, plaintiff's counsel has now directed the court to the evidence he feels makes out his client's best case for disability. *Harris v. Saul*, 835 Fed.App'x 881, 885 (7th Cir. 2020); *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017); *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007); [Dkt. #19, at 3-6]. Thus, the focus is on that evidence the plaintiff believes is integral to this review.

**B.**

As just noted, the medical record goes back over seven years to early November 2013, when plaintiff sought treatment for joint swelling and pain that had begun three weeks earlier. (R. 919). Examination revealed tenderness to palpation of the hands and knees, but no other abnormalities. (R. 920). A week later, she was admitted to the hospital for two days to treat leg swelling and bilateral shoulder pain. (R. 870-874). She was having difficulty raising her arms above her head. (Id.). Grip was good, and there was no swelling. (R. 870). She had no problems with leg range of motion. (Id.). There was no tenderness or swelling. (Id.). A history of lupus was noted, along with the possibility of fibromyalgia. (871-72).

In January 2014, plaintiff saw her rheumatologist, Dr. Lichtenberg: gait was normal, and there was no swelling, and full range of motion in all joints except for shoulders, wrists, and hands, where there were signs of synovitis. (R. 887). Muscle strength was 5/5 throughout. (R. 887). The doctor found 12 tender points and assessed Plaintiff with lupus, myofascial pain, and anemia. R. 889. At a follow-up examination in March 2014, plaintiff had no complaints. (R. 1009). Strength, reflexes, and sensation were again normal throughout. Gait was normal, and there was a full range

of motion in all joints. There was no synovitis or swelling, but there were some unspecified tender points. (R. 1010).

In April 2014, strength, reflexes, and sensation were normal throughout. (R. 1016). There were agin unspecified tender spots and valgus of the knee, but range of motion and gait were normal. (R. 1016). In June 2014, plaintiff sought treatment for a mild body rash. (R. 1060-61). She had no joint or muscle pain. (R. 1060, 1063). In September 2014, plaintiff sought treatment for generalized pain and pain in all joints on both sides of her body; degree was minimal. (R. 1044). Neurological and musculoskeletal exams were normal. (R. 1045).

In May 2015, plaintiff was treated for a splenic infarct, compromised blood flow to the spleen and was treated with Coumadin. (R. 2811). Five months later, when she presented to the supervising hematologist, she was found to be markedly anemic. (R. 2811, 2821). She was a little weak and had a little shortness of breath. (R. 2811). She responded to continued outpatient treatment, but, in February 2016, there was a recurrence of AIHA secondary to a lupus flare-up. (R. 3293). Another course of steroids was prescribed, and her doctor began a regimen of Rituoxan infusion, in mid-March, 2016. (R. 3293). Plaintiff responded well and her hemoglobin concentration was stable, though she was still experiencing fluctuating fatigue. (R. 3293).

In March 2017, plaintiff sought treatment at the VA with migraine headaches, reporting that she had endured them since childhood and still had one or two per week, sometimes lasting all day. (R. 1330). Exam was normal throughout; gait was normal and steady. (R. 1332). In June 2017, imaging of the brain revealed scattered small foci of T2 abnormal signal in the centrum semiovale mostly in the frontal regions, possibly due to microvascular ischemia. (R. 1228-1229).

Treatment records from the VA in November 2008 mention that plaintiff had also been assessed with mood disorder associated with her general medical condition. (R. 1156-1157). In July 2013, plaintiff's primary care physician restarted fluoxetine and alprazolam because of plaintiff's reports of uncontrolled anxiety (R. 824). In September 2015, plaintiff re-established mental health treatment at the VA for the first time since 2010. (R. 1390). She reported that despite taking prescription venlafaxine, she was still feeling depressed and her mood was exacerbated by financial and medical worries. (R. 1390-91). Psychological exam was normal. (R. 1392-93). In October 2015, plaintiff was diagnosed with anxiety, and was prescribed suloxetine. (R. 1160, 1172). In September 2016, plaintiff was prescribed buspirone. (R. 1172).

In January 2017, plaintiff underwent a psychiatric consult at the VA. (R. 1358). She reported worsening depression and anxiety due to her mother on life support with a brain injury. (R. 1358). She was diagnosed with a mood disorder with major depressive-like episode. (R. 1358). She was noted to have a moderate level of functioning, and her mental impairments were noted to be due to physiological conditions. (R. 1358).

## C.

After three administrative hearings and a prior ALJ's decision that was over turned and remanded by the Appeals Council, the ALJ found that plaintiff was not disabled under the Social Security Act. The ALJ determined the plaintiff had the following severe impairments: degenerative joint disease, systemic lupus erythematosis, fibromyalgia, obesity, and depression. (R. 19). The ALJ engaged in a lengthy summary of the medical record (R. 19-28)– it had to be lengthy in this case – and found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments,

20 C.F.R. Part 404, Subpart P, Appendix 1, focusing on Listings 1.02 (dysfunction of a major

joint), 12.04 (depressive, bipolar, and related disorders), and 14.02 (systemic lupus erythematosis).

(R. 20).

The ALJ then determined that plaintiff could perform sedentary work, with a convoluted list

of over a dozen additional limitations: standing and/or walking only 10 minutes at a time; work

allowing use of a cane if walking on an uneven surface or if standing/walking more than 5 minutes;

work allowing for alternating between sitting, standing, or walking for 5 minutes out of every hour,

provided that plaintiff must remain on task while so doing; never climbing ladders, ropes, or

scaffolds; occasional balancing, twisting, stooping, bending, crouching, kneeling, crawling,

or climbing ramps or stairs; frequent reaching bilaterally, except only occasional overhead reaching;

no forceful grasping or torqueing with the hands; no use of vibrating hand tools; frequent fine or

gross manipulation bilaterally; no exposure to light or noise levels exceeding typical

office-environment levels; no concentrated exposure to unguarded hazardous machinery; working

only in non-hazardous environments, including no driving or operating moving machinery and no

working at unprotected heights or around exposed flames or unguarded bodies of water; simple,

routine tasks involving no more than simple decision making; only occasional changes in the work

setting; work requiring only simple judgment; no work involving direct public service, either

in-person or via telephone, but could tolerate brief and superficial interaction with the public that

was incidental to her primary job duties; and only brief and superficial interaction with

supervisors and co-workers. (R. 28-29).

The ALJ then found that the plaintiff's "medically determinable impairments could cause the

alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting

effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 30). The ALJ determined that plaintiff's complaints of pain in her hands and lower extremities were not supported by the medical evidence, and her use of a cane was not prescribed. (R. 30-31). The ALJ further found that flare-ups of her lupus or fibromyalgia were not documented by medical records, and plaintiff was sometimes not compliant with treatment. (R. 31). The ALJ noted that plaintiff testified that she was unable to pick up a pan or open a soda bottle due to issues with her grip. The ALJ questioned how, then, she could grip a cane to help her walk, rise from a chair, or climb stairs. (R. 30).

The ALJ assigned little or no weight to the opinions of plaintiff's two treating rheumatologists that she was disabled because, the ALJ said, they were not supported by treatment notes or the overall record. (R. 34-35). The ALJ also rejected the opinion from the Veteran's Administration finding plaintiff was 70% disabled and could not secure or follow substantial gainful activity, (R. 35-36) because the ALJ said the opinion was contradicted by the treatment record, and included no citations to the record and was not signed. (R. 36).

The ALJ considered the vocational expert's testimony, agreeing with her that plaintiff could no longer perform her past work because it was skilled. (R. 37). Adopting the vocational expert's testimony on what work the plaintiff could perform given her RFC, the ALJ found that the plaintiff could perform the jobs of document preparer (DOT 249.587-08, 50,000 jobs in national economy) and addresser (DOT 209.587-010, 40,000 jobs in the national economy). (R. 38). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 39).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

The substantial evidence standard is a low hurdle to negotiate, *Biestek* , 139 S. Ct. at 1154, but, in the Seventh Circuit, the ALJ also has an obligation to build what is called an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build a "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)("... we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by

a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

The subjectivity of the requirement – one reader might require a far sturdier bridge than another – makes it difficult for ALJs hoping to write acceptable decisions that stand up to judicial scrutiny when challenged. But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).

### III.

The plaintiff makes a number of arguments she contends require overturning the ALJ's decision denying her benefits. First, she argues that there were flaws in the way the ALJ handled and considered the vocational evidence. Next, she complains that the ALJ wrongfully rejected the VA's determination that she was disabled. And finally, she argues that the ALJ's RFC finding failed to account for all of the plaintiff's limitations stemming from her impairments in combination. Any other arguments she might have made are deemed waived. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013).

### A.

We begin with the vocational evidence. At the outset, it is noted that the plaintiff fails to cite a single case in support of any of her arguments regarding the ALJ's treatment of the vocational evidence in this case. Such undeveloped arguments, unsupported by pertinent authority, are

generally deemed waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived ...."); *see also Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 511 (7th Cir. 2020); *United States v. Barr*, 960 F.3d 906, 916 (7th Cir. 2020)("This undeveloped, unsupported argument is waived."); *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005)("It is not our job to do the legal research that [counsel] has omitted."). But, given the challenges the massive record understandably presented for plaintiff's counsel, we will consider the vocational evidence arguments nonetheless.

## B.

The plaintiff argues the ALJ failed to meet the Commissioner's burden of demonstrating the existence of significant numbers of jobs in the national economy that plaintiff could perform. *See* §§ 404.1516(c)(2); 416.960(c)(2); *Chavez v. Berryhill*, 895 F.3d 962, 964 (7th Cir. 2018); *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004). First, the plaintiff complains that the VE, and the ALJ, failed to follow the SSA's "Program Operations Manual System" (POMS) because they provided two examples of jobs plaintiff could perform instead of three. [Dkt. #19, at 9]. But the POMS is "not a regulation" and therefore "has no legal force" and does not even "bind the SSA." *Schweiker v. Hansen*, 450 U.S. 785, 786, 789 (1981); *Andrea K. v. Saul*, 2020 WL 4748150, at *9 (N.D. Ill. 2020); *Deborah T. v. Saul*, 2019 WL 4918143, at *3 (N.D. Ill. 2019). So, the plaintiff's lead argument is a non-starter – apart from the fact that the plaintiff has offered no case law to support it. As the plaintiff concedes, the question is not the number of examples of jobs, but whether

those jobs – or even one job – exist in significant numbers in the national economy. §§ 404.1516(c)(2); 416.960(c)(2); *Chavez,* 895 F.3d at 964.

The plaintiff next argues:

When the ALJ asked her to cite to other examples even though those jobs would not be available in significant numbers, the VE complied, but testified that, as performed, those jobs would require a greater degree of upper extremity use and skill than indicated by the DOT. R. 79-80.

Though the ALJ insisted that the significant numbers calculation would depend on the cumulative availability she failed to elicit testimony as to whether cumulatively the two jobs cited by the VE would meet the threshold. She simply ignored the VE's reservations which did not end there.

[Dkt. #19, at 9]. With all deference, the contention escapes understanding because the ALJ and the VE did *exactly* what the plaintiff claims they didn't do, and that is demonstrated on the very pages of the transcript plaintiff cites to:

VE: The first one would be document preparer. DOT number 249.587-018. It has an SVP level of 2. And *in the national economy, there are 50,000 positions*. A second example would be an addresser. DOT number 209.587-010. SVP level of 2. *In the national economy, there are 40,000 positions*.

(R. 78 (emphasis added)). These numbers are well in excess of what Seventh Circuit precedent deems a significant number of jobs. *See, e.g.*, *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("1,000 jobs is a significant number"). It is not clear why plaintiff would advance such an argument, but it does not support reversal.

Next, the plaintiff submits that, since the RFC and hypothetical were so complicated – the ALJ did not even read it into the record at the hearing, and the VE referred to a written version instead – "it is likely the VE missed the reaching limitation that would be inconsistent with sedentary work." [Dkt. #19, at 9-10]. But speculation is not proof, *Khungar v. Access Cmty. Health Network*,

– F.3d –, – , 2021 WL 164832, at *4 (7th Cir. 2021)("[S]peculation is not sufficient to survive summary judgment . . . there must be evidence."); *Gabb v. Wexford Health Sources, Inc*., 945 F.3d 1027, 1034 (7th Cir. 2019) (noting that "speculation cannot defeat summary judgment"); *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017)(" Mere conjecture or speculation . . . is insufficient to warrant a remand."), and plaintiff presents no evidence that she did miss it, and neither job – document preparer or addresser – suggests that any overhead reaching is necessary.

Plaintiff also takes issue with the ALJ's discussion of her use of a cane. [Dkt. # 19, at 10]. In her decision, the ALJ noted that, in order to use a cane, an individual must be able to grip it firmly enough to provide support and maintain that grip while using it. (R. 30). In the passage that plaintiff seems to be is confused about, the ALJ was in engaged in questioning the extent of plaintiff's allegations regarding her symptoms. (R. 30-31). The ALJ also noted that, although plaintiff claimed she used a cane all the time and had been prescribed one, she also claimed she could not even use her hands to grip a pan or open a soda bottle. (R. 30-31). Because she would have to have a fairly strong grip to support herself on a cane there was some exaggeration going on one way or the other. The ALJ allowed for the use of a cane, but rejected the extent of plaintiff's claims regarding her hands and found she could perform gross and fine manipulation frequently.[2]

---

[2] The ALJ's finding regarding plaintiff's need to use a cane was indeed generous. Despite plaintiff's claim that it was prescribed, plaintiff has provided no evidence to support that. (R. 103-104). Plaintiff's rheumatologist consistently found that she had a normal gait, motor strength, reflexes, and sensation. (R. 999, 1004, 1007, 1010, 1013, 1016, 1018). Plaintiff did not use a cane at her most recent (July 2017) neurology examination, and those examination results, like the others, were normal in regard to gait, motor strength, reflexes, and sensation. (R. 1332). Her treating physician did not mention the need to use a cane in his medical opinion and, in fact, refused to answer the question of whether plaintiff needed one. (R. 3494).

**B.**

The plaintiff next has an issue with the manner in which the ALJ considered the VA's award

of "Unemployable Benefits"– $3200 a month (R. 158)– to the plaintiff.[3]   As the ALJ explained,

under the VA standard, a person could be considered 100% disabled and still be able to perform

substantial gainful activity.  (R. 35).  Instead, the VA talks about "employability."  It gave the

plaintiff the benefit of a "reasonable doubt" in finding her 70% disabled, and went on to find she was

nevertheless entitled to 100% benefits as she was "unable to secure or follow a substantial gainful

occupation." (R. 36, 539).  The ALJ gave the opinion and award no weight for a number of sound

reasons: different standards (reasonable doubt and unemployability), lack of analysis of how

plaintiff's condition affected her functioning, lack of citation to any medical evidence, and conflict

with the medical evidence of record.  (R. 36).

For claims filed prior to March 27, 2017, like plaintiff's, the current regulations provide that

a disability determination by another agency does not bind the SSA.  *See* 20 C.F.R. § 404.1504; *Bird*

*v. Berryhill*, 847 F.3d 911, 913 (7th Cir. 2017).  Thus, the VA's "finding that [plaintiff] is 70%

disabled and unemployable does not establish that [s]he is entitled to SSA benefits." *Bird*, 847 F.3d

at 913; *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006). As the Seventh Circuit explained:

> The VA's disability percentage is based on the average impairment in earning
> capacity caused by service-connected disabilities, 38 C.F.R. §§ 4.10, 4.15, but the
> claimant can be rated less than 100% disabled and still be found unemployable and
> entitled to full disability compensation, if his disabilities render him "unable to

---

[3] At the outset of this case, the plaintiff filed a petition to proceed *in forma pauperis*, alleging she was unable to afford the $400 filing fee.  Despite having relied on her award of Veterans' Unemployable Benefits before the ALJ – and planning to do so again before this court – she claimed she had absolutely no income and neglected to make any mention of her monthly $3200 benefit. [Dkt. #3].  Predictably, Judge Kness ordered her to explain how she managed to pay for the necessities of life.  [Dkt. #7].  Plaintiff paid the $400 fee a few days later. [Dkt. #8].

secure or follow a substantially gainful occupation." 38 C.F.R. § 4.16. Such a finding when made is practically indistinguishable from the SSA's disability determination, which asks whether a medically determinable impairment prevents the claimant from engaging in past relevant work or any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. But there are differences in how the agencies evaluate claims: the VA's evaluation is pro-claimant rather than neutral: "When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant." 38 C.F.R. § 4.3; *Hodge v. West*, 155 F.3d 1356, 1362–63 (Fed. Cir. 1998). That is not SSA's approach.

*Bird*, 847 F.3d at 913. Here the ALJ noted those differences, and noted the lack of evidentiary support for total disability in the record. As already noted, musculoskeletal examinations were nearly uniformly normal. This is not a case where the "ALJ . . . failed to explain why she gave the VA's disability rating such little weight." *Derry v. Berryhill*, 756 F. App'x 619, 624 (7th Cir. 2019). Instead, the ALJ considered the rating, evaluated whether there was support for it, and decided to afford the rating – which, again, is not binding on the SSA – little or no weight. It cannot be said that the ALJ erred.

## C.

Finally, the plaintiff argues that the ALJ's RFC assessment failed to accommodate all of her limitations. The plaintiff contends that the ALJ "exceeded the scope of what she is tasked with assessing at Step 3 of the analysis" and made a "premature determination" the plaintiff was not disabled. [Dkt. #19, at 12]. But, plaintiff then explains that she is not challenging the Step 3 determination – why then raise the issue one might ask – but rather is contending the ALJ failed to accommodate all of her limitations in the RFC finding. [Dkt. #19, at 13]. From there, plaintiff takes something of a scattergun approach, raising a number of complaints about the ALJ's decision.

First, the plaintiff takes issue with the ALJ finding that she could occasionally stoop, crouch, kneel, or crawl. But, the argument is premised on a mistake: submitting that "occasionally" "means up to two thirds of the day." [Dkt. #19, at 13]. That's not what it means; it means "from very little up to one third of the day." The plaintiff cites no evidence to demonstrate that she cannot do these things "very little." [Dkt. #19, at 13]. As already mentioned, lower extremity range of motion, strength, sensation, reflexes, and gait are consistently found to be normal.

But the fact that the medical evidence doesn't support the extent of plaintiff's contentions actually triggers another argument. She contends that the ALJ relied on the medical evidence – normal medical findings or a lack of medical evidence to support plaintiff's alleged limitations – too heavily to discredit her testimony about her pain and limitations. But, the ALJ did not discount her testimony. Indeed, given the RFC finding, the ALJ credited plaintiff's allegations to a great extent; just not to the extent plaintiff would like.

In any event, "to determine the credibility of allegations of disabling pain, an ALJ may consider several factors, including objective medical evidence and any inconsistencies between the allegations and the record." *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020). A claimant's assertions of pain, taken alone, are not conclusive of a disability. *Id.* A diagnosis of fibromyalgia, like any other diagnosis, does not dictate a finding of disability. *Simons v. Saul*, 817 F. App'x 227, 233–34 (7th Cir. 2020)("We do not require an ALJ to credit a plaintiff's testimony regarding his or her subjective perception of pain."); *Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir.2010); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009); *Thompson v. Colvin*, 575 F. App'x 668, 677 (7th Cir. 2014). And, "discrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018); *Elder v. Berryhill*, 774 F. App'x

980, 983 (7th Cir. 2019); *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005); *Thompson*, 575 F. App'x 668 at 677.

While the amount of pain someone experiences is entirely subjective, "how much an individual's degree of pain or fatigue limits [her] functional abilities ... can be objectively measured." *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 322 (7th Cir. 2007). *See also Kennedy v. Lilly Extended Disability Plan*, 856 F.3d 1136, 1141 (7th Cir. 2017)(Manion, J., dissenting); *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n.5 (1st Cir. 2003) ("While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis."). A court cannot force an ALJ to accept a claimant's allegations that her fibromyalgia is so debilitating that she is bedridden for months when there is no doctor's statement – or even a statement by the plaintiff to a doctor – to support it. Nor must an ALJ accept that she cannot grip a pan, but can grip a cane constantly. Moreover, there is the nagging problem with plaintiff's allegation that she has to use a cane at all. Report after report indicates there is nothing affecting her gait, range of motion, or strength, whether that be something objective or subjective. *See, e.g., Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010)(normal range of motion, gait, and strength findings undermines allegations of disabling limitations).[4] As such, we can find no fault with the ALJ's treatment of plaintiff's allegations.

---

[4] Along these lines, plaintiff also complains that the ALJ's finding that the plaintiff " must stand for five minutes every hour, paired with the seemingly arbitrary provision that she must only use a cane if standing for more than five minutes. . . makes no sense and has no support in the record. . . . [as] [t]he 'timeframes' seem plucked out of thin air . . . ." [Dkt. #19, at 13]. But, again, the evidence suggests that plaintiff would not need a cane at all, and plaintiff cites no evidence to indicate she would need it more than five minutes at a time.

Next, the plaintiff has issues with the ALJ limiting her to unskilled work in order to accommodate moderate limitations in concentration. [Dkt. #19, at 14-15]. But, the required common sense reading of the ALJ's opinion – *see Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019)[5] – shows that the accommodations the ALJ allowed plaintiff came from plaintiff's own testimony and reports: simple tasks rather than multiple tasks limitation of distractions that might affect concentration, minimization of stress through a limitation to minor work changes and simple decision-making. (R. 27, 34). There is nothing wrong with an ALJ attempting to fashion concentration, persistence, and pace accommodations based on a plaintiff's testimony regarding what gives rise to such alleged problems.

The guidance on review of ALJs' accommodations of concentration limitations – "CPP" cases – is somewhat nebulous. On the one hand the Seventh Circuit has said that "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019). *See also O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016). On the other hand, the Seventh Circuit has more recently held that "a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Pavlicek v. Saul*, – F.3d –, –, 2021 WL 1291614, at *4 (7th Cir. 2021). In still other cases, the court has found that a plaintiff with a moderate restriction on concentration,

---

[5] Common sense and human experience have a role to play in all cases. *United States v. Montoya De Hernandez,* 473 U.S. 531, 542 (1985); *Greenstone v. Cambex Corp.,* 975 F.2d 22, 26 (1st Cir.1992) (Breyer, C.J.); *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir.2009); Posner, How Judges Think at 116 (Harv. Univ. Press 2008). *See also Pin Zhuang Chen v. Holder,* 2014 WL 4436408, 5 (4th Cir.2014); *Xu Dong Chen v. Holder ,* 421 Fed.Appx. 82, 84 (2nd Cir. 2011).

persistence, and pace can perform simple, repetitive work. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009) (claimant with deficiencies in concentration, persistence, or pace can perform semiskilled work); *Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002) (claimant with moderate limitations in concentration, persistence, or pace can perform "simple and repetitive light work"). And, more specifically, the court has found it acceptable for an ALJ to translate a moderate restriction into a quota or pace limitation where the ALJ draws it from the narrative assessment of a doctor. *See, e.g., Pavlicek*, *supra* at *4; *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *Baldwin v. Berryhill*, 746 F. App'x 580, 584 (7th Cir. 2018). Or, where the ALJ attempts to trace it from a claimant's testimony regarding what distracted her or gave her problems concentrating. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020); *Kuykendoll v. Saul*, 801 F. App'x 433, 438 (7th Cir. 2020).

That's what the ALJ did here, tracing limitations back to plaintiff's allegations, as the ALJ did in *Martin* where the Seventh Circuit allowed an item by item connection of accommodation to alleged limitations:

> Start with concentration. The second ALJ found that "[Martin] could maintain the concentration required to perform simple tasks, remember simple work-like procedures, and make simple work-related decisions." Moving to persistence, the ALJ, in defining and tailoring the RFC, further determined that Martin could stay on-task and thereby "meet production requirements." Of course, even if someone is on-task, it is still possible she may operate at such a slow pace that an employer would not find her work satisfactory. Hence, the second "P"—pace—must enter the equation. The ALJ incorporated pace-related limitations by stating that Martin needed flexibility and work requirements that were goal-oriented.

950 F.3d at 374. But the explanation that passed muster in *Martin* pales in comparison with the detailed explanation the ALJ provided here:

Accepting that the claimant did experience some degree of lupus - and fibromyalgia-related problems with memory and concentration it was reasonable to limit her too occupations that required completion of no more than simple, routine tasks. To avoid distraction, the work setting should require no more than occasional and minor changes. In her first Function Report, she wrote that she generally could handle stress but in the second report that was submitted seven months later the claimant declared she did not handle stress or change in routine well. Giving her the benefit of th doubt and accepting she had some increased difficulty responding to stress the claimant was limited to work that required no more than making simple decisions and exercising of no more than simple judgment.

In the second hearing the claimant testified that she had avoided people after being diagnosed with fibromyalgia. There was no evidence that suggested she was exhibiting isolative behavior, but in the current hearing she did testify to increased anxiety in public places. The claimant also testified that she became angry very easily. To help limit her interaction with individuals in the workplace, the claimant was precluded from occupations that involved direct public service, in person or over the phone but she could tolerate brief and superficial interaction with the public incidental to her primary job duties. The claimant was also limited to brief and superficial interaction with supervisors and co-workers.

(R. 34).

Thus the ALJ went far beyond merely equating a restriction on concentration with a capacity limited to simple work. Moreover, the plaintiff is unable to posit any limitations that ought to have been included in the ALJ's RFC or cite any evidence to suggest greater limitations were necessary. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (ruling any error in RFC harmless in part because plaintiff hypothesized no additional restrictions); *Kuykendoll v. Saul*, 801 F. App'x 433, 438 (7th Cir. 2020)("Notably, Kuykendoll posits no relevant limitations in concentration, persistence, or pace that the ALJ should have included in his RFC assessment."). And, finally, a moderate limitation denotes fair functioning, which seems adequate for performing simple, routine tasks. *Pavlicek,* 2021 WL 1291614, *4. But see O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698–99 (7th Cir. 2016)*(*Agency regulations, as far as we can tell, do not quantify what is meant by a "moderate"

restriction . . . If a moderate impairment on maintaining concentration, persistence, and pace equates to being off task at least 15% of the time then, according to the vocational expert, [plaintiff] is essentially unemployable.").

### D.

The plaintiff seems to have opted for remand by a thousand paper cuts. The Seventh Circuit has frequently criticized this type of brief-writing, *see Dynegy Mktg. & Trade v. Multiut Corp*., 648 F.3d 506, 513 (7th Cir. 2011); *United States v. Pearson*, 340 F.3d 459, 464 (7th Cir. 2003); *United States v. Evans*, 92 F.3d 540, 546 (7th Cir. 1996) calling it, variously, "the equivalent of a laser light show of claims may be so distracting as to disturb our vision and confound our analysis." *United States v. Lathrop*, 634 F.3d 931, 936 (7th Cir.2011) (collecting cases); a "scattergun approach [that] generally does not serve [clients] well, *Cole v. Comm'r*, 637 F.3d 767, 772 (7th Cir.2011); or a "kitchen sink approach to briefing [that] cause[s] distraction and confusion, [and] also consumes space that should be devoted to developing the arguments with some promise." *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir.2000). A brief containing a similar laundry list of arguments once caused the Sixth Circuit to remark that "[w]hen a party comes to us with nine grounds for reversing the [lower court's decision], that usually means there are none." *Fifth Third Mortg. Co. v. Chi. Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012). *See also Walker v. Abbott Laboratories*, 416 F.3d 641, 643 (7th Cir. 2005)*; United States v. Mahoney*, 247 F.3d 279, 282 (D.C. Cir. 2001).

In the end, again, what matters is evidence. Diagnoses are not disabilities. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). *See also Gedatus v. Saul,* _F.3d_, 2021 WL 2021 WL 1589329 (7th Cir. 2021); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)("The issue in the case is not the existence of these various

conditions of hers but their severity and, concretely, whether, as she testified . . . they have caused her such severe pain that she cannot work full time."). If plaintiff wanted additional restrictions, she had to cite evidence. If there was evidence that indicated she was unable to function; that she was bed-ridden for months at a time as she claims – as opposed to the normal findings in report after report – she had to direct the court to it.

And, again, we empatize with the challenges of dealing with a massive record. The court does it in most Social Security cases, week in and week out, albeit with records generally not as massive as this one. But, reiterating, and as the Commissioner points out [Dkt. #21, at 9], it is not the court's job to locate evidence to support a parties' contentions; that's counsel's job. *Hildreth v. Butler*, 960 F.3d 420, 429 (7th Cir. 2020); *Rhodes v. Dittmann*, 903 F.3d 646, 664 (7th Cir. 2018); *David R. v. Saul*, 2020 WL 6565244, at *8 (N.D. Ill. Nov. 9, 2020). It is telling, perhaps, that when challenged by the Commissioner to cite evidence to support her claims [Dkt. #21, at 9-11], the plaintiff's Reply brief ignored the challenge. [Dkt. # 22]. Such silence can be meaningful – and deafening. *Cf. United States v. Hale,* 448 F.3d 971 (7th Cir. 2006); *City of Joliet v. New West LP*, 562 F.3d 830, 836 (7th Cir. 2009)("that silence is telling"); *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1172 (7th Cir. 1997)("silence can be pregnant...."). But when a record is extremely large and difficult to navigate, that should encourage greater care in formulating supporting arguments and in citing supporting evidence. With a record as massive and rambling as this one, a reviewing court justifiably can expect more help from counsel in locating evidence to support his client's disability claim – not less. It is not for the court to scour the record and do the work of counsel. *Kreg Therapeutics, Inc. v. Vital Go, Inc.* 919 F.3d 405, 415 (7th Cir. 2019); *United States v. Lanzotti,* 199 F.3d 954, 960 (7th Cir. 1999).

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #20] is granted, and the plaintiff's motion [Dkt. # 19] is denied.  The plaintiff's motion to proceed *in forma pauperis*, which remains "pending" through a computer error [Dkt. #3], is stricken as it has  clearly been moot for several months. [Dkt. #8].

**ENTERED:** _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/6/21